The major question presented by this cause in this court is whether the provisions of the ordinances in question, which impose an inspection fee upon the plaintiff in error and others similarly situated for inspection service rendered by the municipality and do not impose an inspection fee upon certain other establishments engaged in the same occupation, which receive a free inspection service from the federal government and do not require or receive an inspection service from the municipality, are for that reason invalid.
The other questions sought to be raised here are either questions of fact or questions of interpretation. The question, whether the fee provided by the ordinance is so excessive as to be out of proportion to the expense of inspection, was before the Court of Appeals, which heard this case upon appeal, and that court declined to find the fee to be so out of proportion. It may be that the administration of this ordinance in the future will disclose such a disproportion as to warrant a judgment of invalidity upon that ground; but until a court trying the facts makes a finding of either the actual or probable receipts and expenditures, no legal question is presented on that phase of the case.
The question whether the ordinance attempts to invest the division of health of the city of Dayton with a discretion to inspect or not inspect the animals and carcasses slaughtered in the establishments *Page 229 
which are entitled to and do receive federal inspection and approval of such animals and car-casses is answered by an interpretation of the ordinance itself. It is a canon of legal interpretation that all the provisions of an act, or an ordinance, relating to the same subject-matter, will be so interpreted, if possible, as to give effect to all; and this is so whether the several provisions were enacted at the same time or whether some were enacted as amendments, and long subsequent to the enactment of the original ordinance, and the rule of preference of later enactments is resorted to only where there is an irreconcilable conflict.
The validity of amended Sections 735 and 737 is attacked. Those sections read:
"Section 735. Slaughtering Permit — Inspection Fees. The proprietor or operator of each slaughtering, packing, meat canning, rendering or similar establishment located within the corporate limits of the city and engaged in the slaughtering of cattle, calves, sheep, swine or goats, or in the packing, canning or other preparation of any food product into which the meats, or any food product of any such animal enter, either in part or in whole, for Dayton market, shall make written application to the division of health for a permit so to do; said application shall state the location of the establishment, the address of the owner or authorized agent of the same, the kind of animals slaughtered, the day and hour of slaughter, the time per day consumed in slaughtering, an estimate of the number of animals of any species slaughtered per day each week, an estimate of the amount of meat or meat food products received from other establishments, and the *Page 230 
character, quantity and proposed disposition of the products of said establishments, and such other information as may be required by the health officer. Upon the filing of such an application with the division of health, and the payment of the fee therefor, which shall be $5.00 or $2.50 in case an application is made at any time after July 1, in any year, the health officer shall cause an inspection of said establishment to be made, and if the same shall be found to comply with the provisions of the regulations, whether state or municipal, relative to the construction, equipment and cleanliness of such establishments, a permit shall be issued, which permit shall entitle the licensee or grantee of such permit to conduct the business thus licensed for the period as hereinafter provided, but the payment of said fee shall not be construed to relieve or excuse the payment of the inspection fees as provided herein for the inspection of animals slaughtered or to be slaughtered.
"All permits issued hereunder shall expire on the thirty-first day of December following date of issue, and shall be renewable annually upon payment by applicant of the fee herein required and compliance with all the requirements of the laws of the state of Ohio, and with the requirements of the ordinances and the health regulations of the city of Dayton to the satisfaction of the health officer, but upon failure, neglect or refusal of applicant so to do, the health officer shall refuse to grant permit, as herein provided, and may revoke a permit already granted.
"Any person, firm or corporation paying the fee required by this section and receiving permit hereunder, *Page 231 
shall not be required to take out permit and pay the fee therefor, as required by Section 17 of the 'regulations relating to meat' adopted by the board of health of the city of Dayton, July 13, 1909.
"Each animal slaughtered in an establishment licensed pursuant to this section shall be subject to inspection by the health officer or his representative and the following fees shall be paid therefor: beef, fifty cents (50c) per animal; all other animals twenty-five cents (25c) per head and each such licensee shall pay the fees thus accumulated at least twice monthly. The fees for such inspections made during the first half of each calendar month shall be paid on or before the twenty-fifth day of such month and those for the second half of the month shall be paid on or before the tenth day of the following month, failing which in either event inspections of animals at such establishment shall cease.
"Nothing herein shall be construed as obligating, requiring or making it the duty of the health officer or his representatives to furnish or conduct inspections, as herein provided, of animals slaughtered by any proprietor or operator as described in this section located beyond the corporate limits of the city."
The validity of the permit fee is not here questioned.
"Section 737. Farmers and Stockmen — Inspection Fees, etc.
— It shall be the duty of any farmer or stockman who is a resident of Montgomery county, Ohio, and who slaughters swine of his own raising for direct sale or disposition to the consumer within the city of Dayton, to see that each such animal is inspected and approved by the health officer or his representative, before any meat or other food *Page 232 
product of any such animal may be sold, offered for sale or otherwise disposed of within the city of Dayton. It shall be unlawful to fail so to do as to any animal the meat or other food products of which is sold or offered for sale or otherwise disposed of in the city of Dayton by such farmer or stockman, his agent or representative, or by anyone else whom he knows or has reason to believe will so dispose of same in the city of Dayton. For such inspection service the following fees shall be paid to the inspecting officer, who shall demand and receive the same before the inspections are made, to wit: Two dollars and fifty cents ($2.50) for the first animal and one dollar ($1.00) per head for additional animals, to and including the next ten and fifty cents (50c) per head for all animals over eleven, inspected on the same inspection call.
"In order to carry on the work of such inspection in an orderly, efficient manner the health officer, as he may find necessary, is hereby authorized to make such rules and regulations: (1) for districting the county, (2) by designating certain days for the slaughtering of animals, (3) as to length of time notice must be given the division of health to enable inspections to be made, and (4) such other rules and regulations consistent with the provisions of this ordinance as may be found necessary to carry on the inspections hereby required.
"By the term 'his own raising,' used herein, is meant that such animal or animals were under the care and attention and were fed by such farmer or stockman just previous to being slaughtered, a period not less than three months.
"The health officer, or any inspector or any officer *Page 233 
or employee of said city, representing the health officer, may require any such farmer or stockman to make affidavit that the animal or animals to be slaughtered are his own raising, as here defined.
"Nothing herein shall be construed as obligating, requiring or making it the duty of the health officer or his representatives to furnish, provide or conduct inspections, as herein provided, of animals not of his own raising slaughtered by any farmer or stockman."
Prior to the enactment of amended Sections 735 and 737, Section 733 had been enacted and is unrepealed. That section provides:
"Section 733. Inspection of Meats. That it shall be unlawful for any person, firm, or corporation to expose or offer for sale, sell, or otherwise dispose of, or have in his, their, or its possession, within the city of Dayton, any meat of any cattle, calves, sheep, lambs, goats, or swine, or any food product or products derived from the carcass or carcasses of any of such animals, which said meat or food product or products do not bear the meat inspection brand or other official mark of identification indicating the same has been inspected and passed by the division of health of the city of Dayton, or by some other health authority, whose inspection standard is equal to and recognized by the said division of health of the city of Dayton, including inspection by the United States Department of Agriculture.
"Any meat, any carcass, or part thereof, or any food product or products derived from the carcass or carcasses of any of the animals hereinbefore named, found offered or exposed for sale, or held in possession for the purpose of being offered or *Page 234 
exposed for sale, or to be otherwise disposed of within the city of Dayton, Ohio, without bearing one of the inspection brands regularly recognized by the division of health of the city of Dayton, Ohio, as above provided, shall be seized, confiscated, and destroyed by the said division of health of said city."
Interpreting these three sections in the light of each other, we find the only reasonable interpretation to be that the division of health is not authorized by the ordinance to inspect meat that has been inspected and approved by the federal government, or by some other authority whose standard of inspection and wholesomeness is equal to that provided by the ordinance in question. Sections 738 and 740 define the way in which inspection shall be made, and Section 740 specifically provides "any lesion, disease, or other condition found shall be judged in accordance with the regulations relating to the inspection of meat as prescribed by the Department of Agriculture of the United States." No question, therefore, can be made that the inspection standards of the federal government are inferior to the standard adopted by the division of health of the city of Dayton, since the ordinance itself requires of the division of health that it adopt the standard of the Department of Agriculture of the United States.
No question is here made of the character of the inspection or the standard of approval of the federal government.
Section 3, Article XVIII, of the Constitution of Ohio, confers upon municipalities "all powers of local self-government and to adopt and enforce within their limits such local police * * * regulations, as are not in conflict with general laws." It is and *Page 235 
must be conceded by the defendant in error that the preservation of the public health of the municipality falls within the purview of local police power; that the prevention within the municipality of the sale and offer for sale of unwholesome meat for human consumption tends to preserve the public health, and that an official ante mortem inspection of the animal and an official post mortem inspection of the carcass of the animal and an official approval or disapproval of such animal and carcass from which the meat intended for such sale is obtained are appropriate means of preventing a sale or exposure for sale of diseased and unwholesome meat.
The power of the municipality to exact an inspection fee has been affirmed by this court in the case of the PrudentialCo-operative Realty Co. v. City of Youngstown, 118 Ohio St. 204, 160 N.E. 695, and the power of the state in that respect in the case of Cincinnati Gas Light Coke Co. v. State,18 Ohio St. 237, and is generally recognized by the Supreme Court of the United States and in other jurisdictions. But it is contended, that, since there exist in the city of Dayton three slaughtering establishments which do an interstate business and are therefore entitled to receive and do receive a free inspection of all animals slaughtered by them, and the stamp of approval of the federal government upon all carcasses that have been found free from disease and fit for human consumption, for that reason the exaction of an inspection fee from the slaughtering establishments which do not receive federal inspection is a discrimination against such slaughtering establishments.
A fee exacted for an inspection of a product intended *Page 236 
for sale for human consumption is not a tax, and the power to exact such fee, however otherwise it may be restricted, is not subject to the restrictions on the power of taxation. It is an incident of the police regulation of an occupation, which, because of its effect upon and relation to the public health, requires a reasonable inspection. The inspection is a service to the person engaged in the occupation and a discharge of duty owing to the public by the municipality. But for the service, the fee, as such, could not be lawfully exacted; and since a reinspection of an animal and carcass inspected and approved by the federal government would be neither a service to the person engaged in the occupation requiring inspection, nor the performance of a duty to the public, the municipality could not lawfully impose such reinspection upon the establishments slaughtering and offering for sale federal inspected and approved meat, and could not charge a fee, as such, for a service not rendered or intended to be rendered.
If, then, because of the fact that certain slaughtering establishments within the city of Dayton are entitled to and do receive free inspection from the federal government, and certain other slaughtering establishments are not entitled to and do not receive federal inspection, the city is divested of the power to impose the reasonable expense of such inspection upon the persons engaged in an occupation requiring such service, it is forced to choose between abandoning a service in promotion of the public health or providing for such service by general taxation.
The same logic which would render this ordinance invalid because of the presence within the municipality *Page 237 
of the two classes of slaughtering establishments, the one doing an interstate business and the other an intrastate business, would render invalid any similar ordinance in any municipality in which meat is sold or offered for sale, slaughtered by an establishment, wherever located, doing an interstate business, and would make the police power of the municipalities of Ohio in that respect dependent upon an act of Congress rather than upon the Constitution of the state. The right to such free inspection by the federal government is not foreclosed to the defendant in error and those similarly situated. The advantage of the three establishments doing an interstate business over the defendant in error and those similarly situated is an advantage that inures to them by reason of the fact that they voluntarily bring themselves within the class entitled to receive such service from the federal government; and the fee exacted of the defendant in error, and those similarly situated, is exacted, not as a tax or a penalty, but in payment for a service which they have not seen fit to qualify themselves to obtain from the federal government, and which the city, in the exercise of its police powers, has determined is necessary for the preservation of the public health as a prerequisite to the sale of their meat within the city. The inequality that results is not different in principle from any other natural or artificial advantage that is open to all persons engaged in a business, but of which some have availed themselves and some have not.
Judgment reversed.
MARSHALL, C.J., KINKADE, JONES, MATTHIAS, DAY and ALLEN, JJ., concur. *Page 238 
 ON REHEARING.
This cause came on to be heard upon the motion of the defendants in error to modify the judgment heretofore entered in this cause and to remand this cause to the Court of Appeals of Montgomery county, Ohio, for the purpose of a hearing and determination by such court of the question whether or not the fees charged under the meat inspection ordinance of the city of Dayton are out of proportion to the expense of such inspection and for that reason unlawful; on consideration whereof said motion is sustained and it is ordered and adjudged by this court that the judgment heretofore entered in this cause be and the same hereby is so modified and the cause is remanded to such court and such court is directed to hear and determine, as of the date of such bearing, whether or not the fees charged are out of proportion to the expense of such inspection and whether or not such ordinance is for that reason unlawful.
Former judgment modified and cause remanded.
MARSHALL, C.J., KINKADE, ROBINSON, JONES, MATTHIAS, DAY and ALLEN, JJ., concur. *Page 239