CITY OF PORTSMOUTH, APPELLANT, v. McGRAW, APPELLEE.

[Cite as Portsmouth v. McGraw (1986), 21 Ohio St. 3d 117.]

(No. 84-1824—Decided January 22, 1986.)

*Richard T. Schisler,* city solicitor, for appellant.
*Franklin T. Gerlach,* for appellee.

HOLMES, J. The sole issue presented is whether a municipality may validly adopt and enforce ordinances requiring its residents who accumulate garbage to use its garbage collection service and pay it a reasonable fee. For the reasons set forth below, we reverse the appellate court's ruling and uphold the municipality's sanitation regulation.

It is fundamental that Ohio's cities are authorized to regulate local sanitation. *State, ex rel. Moock,* v. *Cincinnati* (1929), 120 Ohio St. 500.[3] The home rule provision of the Ohio Constitution, Section 3, Article XVIII, provides that:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

In *Garcia* v. *Siffrin* (1980), 63 Ohio St. 2d 259, 269 [17 O.O.3d 167], certiorari denied (1981), 450 U.S. 911, we noted that "[t]his amendment has repeatedly been interpreted by this court as being a direct grant of authority to a municipality to enact local self-government and police regulations," citing *Struthers* v. *Sokol* (1923), 108 Ohio St. 263; *Youngstown* v. *Evans* (1929), 121 Ohio St. 342. In fact, this court must uphold such regulations if they bear " 'a real and substantial relation to the public health, safety, morals, or general welfare of the public' " and if they are " 'not unreasonable or arbitrary.' " *DeMoise* v. *Dowel* (1984), 10 Ohio St. 3d 92, 96, quoting *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103, paragraph five of the syllabus [4 O.O.2d 113]; *Porter* v. *Oberlin* (1965), 1 Ohio St. 2d 143 [31 O.O.2d 236]; *Downing* v. *Cook* (1982), 69 Ohio St. 2d 149 [23 O.O.3d 186]; and *California Reduction Co.* v. *Sanitary Reduction Works* (1905), 199 U.S. 306, 318-319.

The questions of whether an exercise of the police power is really and

---

[3] The *Moock* court stated at 505 that the power to enact regulations concerning public health and providing for the collection and disposition of garbage has been conferred upon municipalities by what are now R.C. 715.37 and 715.43 as well as by the home rule provisions of the Constitution.

R.C. 715.37 provides in pertinent part:

"Any municipal corporation may:

"(A) Provide for the public health;

"(B) Secure the inhabitants of the municipal corporation from the evils of contagious, malignant, and infectious diseases; * * *"

R.C. 715.43 provides:

"Any municipal corporation may provide for the collection and disposition of sewage, garbage, ashes, animal and vegetable refuse, dead animals, and animal offal, and may establish, maintain, and regulate plants for the disposal thereof."

substantially related to the public health, safety, morals or general welfare of the public, and whether such exercise is unreasonable or arbitrary, are questions initially committed to the judgment and discretion of the legislative body and, unless the decisions of such legislative body on those questions appear to be clearly erroneous, the courts will not invalidate them. *Benjamin, supra,* at paragraph six of the syllabus; *DeMoise, supra,* at 96-97; *Ohio Edison Co.* v. *Power Siting Comm.* (1978), 56 Ohio St. 2d 212, 218 [10 O.O. 3d 371].

Portsmouth's regulatory scheme has the effect of levying a garbage collection fee upon every family or individual who maintains living quarters in the city in which "garbage or refuse, or both, are created,"[4] and of requiring such residents to use the city's garbage collection service.[5] The reasonableness of the fee or the right of the city to assess a reasonable fee for services rendered is not contested. We deal only with the contentions of a Portsmouth resident, who maintains living quarters which admittedly create garbage or refuse, that she need not use the city's garbage collection service, and that enforcing payment of a fee for a service she does not use deprives her of property without due process. Since the enacting legislative body specifically found that "the collection and disposal of garbage and refuse from within the City limits is a matter which affects the public health and welfare of all local residents," and that the ordinance at issue was necessary "for the preservation of the public peace, property, health and safety of the citizens of the City of Portsmouth, Ohio," we must decide, according to the test set out in the above analysis, whether such findings are clearly erroneous.

R.C. 3707.43 provides legislative authority to a municipal corporation to contract "for the collection and removal of the garbage * * * at the expense of persons responsible for the existence of such waste substances." Accordingly, Ohio courts have held that a municipality has the power to

---

[4] Section 941.14 imposes a fee on every "subscriber" to the garbage collection service. Section 941.01 defines "subscriber" as "any householder within the City of Portsmouth, Ohio," and defines "householder" as "the head of a family or one maintaining his or her separate living room or quarters in the City and shall include owners, tenants, and occupants of all premises upon which garbage or refuse, or both, are created."

[5] Section 941.11 makes it unlawful "for any person, firm or corporation other than the Director of Service of the City of Portsmouth or his authorized agent who holds a lawful contract with this City to collect, remove, transport, or dispose of residential garbage and refuse within this City."

Furthermore, Section 941.13 provides:

"No owner, tenant, or occupant of any dwelling shall allow garbage and/or refuse to accumulate in or on his premises for a period in excess of the time interval between the collection trip schedule established by the City. No owner, tenant, or occupant of any place of business shall allow garbage and/or refuse to accumulate in or on his premises for a period in excess of seven (7) days fermenting, putrefying, or odoriferous garbage and/or refuse in containers uncollected or dumped in the open shall be deemed a nuisance and the person or persons responsible shall be liable to prosecution."

make an exclusive contract for the collection and removal of garbage, notwithstanding the fact that it has some commercial value. *Moock, supra.*[6] Also, cities have the authority to limit garbage hauling to duly authorized city employees, *Canton* v. *Van Voorhis* (1939), 61 Ohio App. 419, 421 [14 O.O. 413], and to charge residents who require the collection service a reasonable fee, *Thompson* v. *Green* (C.P. 1943), 12 Ohio Supp. 1 [28 O.O. 99].

Municipalities clearly have authority to establish the standard to which sanitation and garbage disposal must rise. See *Dayton* v. *Jacobs* (1929), 120 Ohio St. 225, paragraph one of the syllabus.[7] This court may, and does, take judicial notice of the effect of garbage on the public health. Without the ability to require every resident of the city upon whose premises garbage or refuse accumulates to conform to a uniform regulation, the city would be unable to tackle all the health problems which would result from a helter-skelter approach of allowing each citizen to individually strew his garbage throughout the city as he sees fit. We hold that Portsmouth City Council's requirement that each family or individual who maintains living quarters in the city, on which garbage or refuse are created, use the city's garbage collection service is a proper exercise of the city's powers of self-regulation granted under the home rule provision of Ohio's Constitution. This statutory scheme is really and substantially related to protection of the public from disease and, therefore, to the public health and welfare.

Although imposition of a garbage collection fee upon those not accumulating garbage, and thus not requiring the service, may violate the owners' due process rights (*Thompson, supra,* at 103), and may be arbitrary and unreasonable,[8] we are not here concerned with such a case. Ap-

---

[6] The *Moock* case upheld as reasonable the city manager's opinion that "in order to handle the garbage of the entire city, it was essential that its collection should be handled by a single operator in order to make it better capable of supervision." 120 Ohio St., at 503.

[7] There, this court held:
"It is within the police power of a municipality, under Section 3 of Article XVIII of the Constitution of Ohio, for the preservation of the public health, to prohibit the sale or exposure for sale of diseased and unwholesome meat * * * and, for the accomplishment of such purpose, to provide that * * * it be first inspected and approved by a duly constituted officer of the municipality, *according to a standard established by such municipality* * * *." (Emphasis added.)

[8] This court voted to deny a motion for certification of the record in the case of *Portsmouth* v. *Kinker* (Sept. 11, 1984), Scioto App. No. 1450, unreported. Kinker alleged that he did not accumulate garbage and that any imposition of a fee for a service not rendered is a deprivation of property without due process. Although we agree with his argument, we note that the ordinance only imposes a fee on subscribers, *i.e.,* those who maintain or otherwise occupy "premises upon which garbage or refuse, or both, are created." Sections 941.01(f), and (g). Therefore, the ordinance does not authorize imposition of a fee on those whose living quarters do not create garbage.

pellee admitted she had garbage; she therefore required the garbage collection service. In the interest of uniform sanitation, the city can constitutionally require her to use the city's garbage collection service, rather than hauling it in friends' trucks, and can impose a reasonable service fee. See *Dayton* v. *Jacobs, supra.*[9] We therefore need not address appellee's arguments regarding citizens who do not require such service, as appellee does not fall within such arguments and lacks standing to present them on behalf of others.

It is our conclusion that a municipality properly exercises its police power over sanitation and public health when it enacts and enforces an ordinance, Chapter 941 of the Codified Ordinances of the city of Portsmouth, that requires all householders who accumulate residential garbage to use the municipal garbage collection service, assesses a reasonable fee for such service, and prescribes a criminal penalty for violations of such ordinance.

Therefore, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings.

*Judgment reversed*
*and cause remanded.*

LOCHER, DOUGLAS and WRIGHT, JJ., concur.

CELEBREZZE, C.J., SWEENEY and C. BROWN, JJ., dissent.

CELEBREZZE, C.J., dissenting. According to the majority, the city of Portsmouth may make LaVeeda McGraw an offer of services which she

---

Because it is reasonable for the city to assume that all living quarters accumulate garbage and are thereby being serviced, the city's establishment of a hardship committee to hear variances is a rational means of determining individuals' circumstances which rebut such a presumption. There is no question that the establishment of such a committee was within the powers granted to the city manager in Section 941.02 to make such rules and regulations relating to garbage collection as may be necessary. The appearance of several citizens who claimed that their circumstances were such that they should be excused from paying the fee obviously necessitated, in the city manager's eye, the hardship committee, created by executive letter dated April 15, 1982, two weeks after the garbage collection fee went into effect. Several variances have been recommended to, and granted by, this committee. There is no reason why others cannot also, in this manner, notify the city that they have no garbage and cannot be billed under the ordinance.

[9] The *Jacobs* court held that, even though certain slaughtering establishments received an inspection service (from the federal government) that met the municipality's standard, and therefore did not require the municipality's inspection service and were not charged any inspection fee by the municipality, such did not invalidate "the exaction by the municipality of a fee for inspection service from establishments which are not entitled to and do not receive inspection service from the federal government and do require and receive inspection service from the municipality." *Jacobs, supra,* at paragraph three of the syllabus.

cannot refuse and for which she must pay whether or not she needs those services.

I question the wisdom of the city's decision to arbitrarily slap McGraw, a Portsmouth senior citizen, with a criminal prosecution for failing to pay the fee for garbage collection service which she did not use. Further, I fail to see the fairness in the manner in which the city has selectively enforced this ordinance. Other non-users of the city's garbage collection service and literally hundreds of persons whose payments were delinquent were not prosecuted as was appellee. McGraw's only "offense" was making a quite sensible objection to the payment of a fee for a service which she neither wanted nor needed.

I join the well-reasoned dissents of Justices Brown and Sweeney and support their conclusion that the city of Portsmouth may not constitutionally prosecute appellee for her failure to pay for a service which she did not use.

SWEENEY and C. BROWN, JJ., concur in the foregoing dissenting opinion.

SWEENEY, J., dissenting.  Given the unconstitutional nature of the Portsmouth ordinance before us, and the capricious manner in which it has been enforced, I must vigorously dissent from the majority's disposition herein.

In addition to the cogent analysis articulated by Chief Justice Celebrezze and Justice Clifford Brown, I wish to elaborate on other instances of the appellant-city's "enforcement" of its ordinance that reveal the arbitrary manner in which compliance of the ordinance was sought.

A companion case consolidated in the trial court with the case of appellee, LaVeeda McGraw, is *City of Portsmouth* v. *Kinker* (Sept. 11, 1984), Scioto App. No. 1450, unreported, motion to certify overruled (January 22, 1986), case No. 84-1902. As set forth in the record submitted by appellant to this court, and as set forth in appellee's brief, Lester Kinker, a resident of Portsmouth who was also charged with violating Section 941.14(D), had no need for the garbage collection service because he had been hospitalized. Kinker stated explicitly in his testimony before the trial court that he had no garbage to be collected and that the city had not removed any refuse from his premises. This testimony was uncontroverted by the city. Kinker stated that he had been told by city officials that he had to pay the fee or go to jail.

Testimony given by the Portsmouth Public Utilities Director revealed that residents who were "going to be away for a couple months" did not have to pay the garbage fee. Testimony at trial by the Portsmouth City Manager indicated that if a citizen lives in Florida several months of the year and is not at home, that citizen is not required to pay the garbage fee. The city manager further testified that if a person eats all his meals out, and no garbage is generated at his residence, no charges will be imposed.

Notwithstanding this testimony elicited from city officials, the record shows that the city's enforcement of the garbage fee is unreasonable, discriminatory and palpably arbitrary.

Upon a careful review of the testimony given at trial, it appears that if you reside in the city of Portsmouth and are affluent enough and fortunate enough to maintain a winter home in Florida, you are exempt from paying the garbage fee during the course of your absence. However, if you are less fortunate and are confined in a hospital, as Kinker was, or if you take care of your own rubbish, as is the case with McGraw, then the appellant-city will bring a criminal action against you for failing to pay the garbage fee.

The inherent injustice within such a scheme is manifest. Certainly the police power possessed by all governments was never intended to be so capricious and unreasonable.

I believe that this court's prior pronouncement in *Dayton* v. *Jacobs* (1929), 120 Ohio St. 225, should be applied to the instant causes: "But for the service, the fee, as such, could not be lawfully exacted * * *." *Id.* at 236. Likewise, the reasoning employed by the court in *Thompson* v. *Green* (C.P. 1943), 12 Ohio Supp. 1 [28 O. O. 99], should be adopted by this court. In *Thompson,* the city of Columbus attempted to collect a garbage fee, similar to the one in issue, from persons who did not use the city's garbage collection service. In relying on our decision in *Jacobs, supra,* the court stated at 5 that "* * * insofar as the ordinance attempts to charge for the collection of garbage and rubbish, owners of dwellings who do not require such service, it violates the Constitution of Ohio * * * and also the 'due process' clause of the Federal Constitution."

Based upon the foregoing, I would affirm the court of appeals in its determination that the use of criminal sanctions to enforce the collection of fees for services not used is in violation of Section 1, Article I of the Ohio Constitution, as well as the Fourteenth Amendment to the United States Constitution.

CELEBREZZE, C.J., and C. BROWN, J., concur in the foregoing dissenting opinion.

CLIFFORD F. BROWN, J., dissenting. I must respectfully dissent from the majority's approval of criminal sanctions for nonpayment of a city-imposed mandatory "service charge" for garbage collection.

On March 9, 1982, the Portsmouth City Council enacted Ordinance No. 1982-14 which imposes a "service charge" upon each "subscriber" to the city's garbage collection operation. The term "subscriber" is defined by the ordinance as "any householder within the City of Portsmouth, Ohio." The term "householder" is further defined as including "owners,

tenants and occupants of all premises upon which garbage or refuse, or both are created." The preamble of the Portsmouth ordinance describes the charge as a fee for the collection of garbage. At trial, the city manager characterized the charge as a "fee for service to be rendered."

Appellee, LaVeeda McGraw, had no need for the city's garbage collection service. She disposed of her own garbage by hauling it to the dump. She told city officials she did not want the garbage collection service and did not wish to be billed for it. Nevertheless, the city billed her for the service she did not use; McGraw refused to pay.

The city responded by criminally prosecuting McGraw, claiming that "* * * LaVeeda McGraw, did knowingly fail to pay the Garbage Service Charge for City of Portsmouth garbage and refuse collection * * * in violation of Section 941.14(D) of the Codified Ordinances of the City of Portsmouth, Ohio." At the time McGraw was prosecuted, approximately seven to eight hundred fee accounts were delinquent. However, only six other Portsmouth residents who publicly refused to pay were so prosecuted. The city manager testified that persons who planned to be absent from home for a couple of months were not required to pay the fee, and that if a person ate all meals out, so that no garbage was generated at his residence, no charges were imposed. He testified further that the city continued to pick up garbage whether people paid or not, and never discontinued service to anyone.

It must be noted that the city did not prosecute McGraw for illegally hauling her garbage, an activity which was also subject to criminal penalties. She was prosecuted only for her failure to pay a service fee for a service she did not want and did not use. Both the trial court and court of appeals held that the city's imposition of a service fee is unconstitutional as applied to those who do not use the service.

In *Dayton* v. *Jacobs* (1929), 120 Ohio St. 225, this court considered the validity of an ordinance which required certain city inspections, and charged a fee for city inspection service only as to establishments which were not already federally inspected. Finding that such an ordinance did not unlawfully discriminate as to those who were required to accept the city's inspections and pay the resulting fee, this court stated:

"But for the service, the fee, as such, could not be lawfully exacted; and since reinspection of an animal and carcass inspected and approved by the federal government would be neither a service to the person engaged in the occupation requiring inspection, nor the performance of a duty to the public, the municipality could not lawfully impose such reinspection upon the establishments slaughtering and offering for sale federal[ly] inspected and approved meat, and could not charge a fee, as such, for a service not rendered or intended to be rendered." *Id.* at 236.

Applying this sound principle to the case at bar, I would hold that a service charge for garbage collection may only be lawfully exacted from

users of the service and, therefore, a non-user may not be criminally prosecuted for her failure to pay a fee for a service she did not use.

Accordingly, I would affirm the judgment of the court of appeals.

CELEBREZZE, C.J., and SWEENEY, J., concur in the foregoing dissenting opinion.