**Ivan MEYER, Plaintiff, Appellant and Cross–Appellee,**

v.

**CITY OF DICKINSON, a municipal corporation, Defendant, Appellee and Cross–Appellant.**

Civ. No. 890100.

Supreme Court of North Dakota.

Jan. 25, 1990.

of the case. *Grenz v. Kelsch*, 436 N.W.2d 552 (N.D.1989).

James D. Geyer, of Mackoff, Kellogg, Kirby & Kloster, P.C., Dickinson, for plaintiff, appellant and cross-appellee.

Vince H. Ficek, Dickinson, for defendant, appellee and cross-appellant.

VANDE WALLE, Justice.

Ivan Meyer appealed from a district court judgment holding him liable for delinquent water bills incurred by his vendee under a contract for deed. The City of Dickinson cross-appealed from that part of the judgment invalidating its ordinance which provides that charges for water service constitute a lien against the property served and allows the amount of the unpaid bills to be assessed as taxes against the property. We affirm that part of the judgment holding Meyer personally liable for delinquent water bills and reverse that part of the judgment invalidating Dickinson's tax-lien ordinance.

In 1979, Meyer sold the Ivanhoe Inn in Dickinson to Ralph Hansen on a contract for deed. With Meyer's consent, the contract for deed was assigned to Dickinson Associates Ltd. [Associates] on October 2, 1980.

The City supplied water service to the Ivanhoe Inn. During its occupancy of the Ivanhoe Inn, Associates' payment of water bills was sporadic. On September 1, 1982, when Associates abandoned the property, it owed $4,876.10 in delinquent water bills and $2,560 for a water meter installed by the City in June 1982.

Meyer resumed possession of the Ivanhoe Inn on September 1, 1982, and brought an action against Associates to cancel the contract for deed and to recover damages

for waste. The contract for deed was cancelled and Meyer recovered damages for waste. See *Meyer v. Hansen*, 373 N.W.2d 392 (N.D.1985).

The City notified the County that $7,436.10, representing the delinquent charges for water and the meter, was to be assessed against the property and included in the 1982 statement of real estate taxes. Meyer paid the taxes under protest. Meyer sought a tax abatement from Stark County for various taxes paid under protest, including the assessments for water.

Because the City was not a party to the abatement proceedings, the County deposited the disputed water assessments with the district court. Meyer then commenced this action to recover the assessments, asserting that the ordinance allowing assessment of delinquent water bills against the property was not authorized by statute. The City answered and counterclaimed, asserting that the ordinance was valid and, even if it was not, Meyer was liable for the water charges under a separate ordinance which made the owners and occupants of property jointly and severally liable for water supplied to the premises.

On motions for summary judgment, the trial court first held that the ordinance allowing a lien and tax assessment was unauthorized by statute. The court thus entered summary judgment in favor of Meyer on his complaint. The City sought an immediate appeal, which we dismissed because the counterclaim remained pending and no certification pursuant to Rule 54(b), N.D.R.Civ.P., had been issued. See *Meyer v. City of Dickinson*, 397 N.W.2d 460 (N.D. 1986).

On remand, on cross-motions for summary judgment on the City's counterclaim, the court held that the ordinance holding owners and occupants jointly and severally liable for water supplied to the property was authorized by statute and accordingly granted summary judgment to the City for the amount of the unpaid bills.

■ Meyer's primary contention on appeal is that the City was not authorized to enact an ordinance holding owners of property liable for water provided to third parties occupying the property. The ordinance in question is Section 33–47 of the Dickinson City Code, which provides in pertinent part:

"*Sec. 33–47. Joint and several liability of owners and occupants; billing and payment after notice of termination.*

"The owner and occupant of each premise shall be jointly and severally liable for all charges for water and sewerage service during the period of their respective ownership or occupancy and until receipt of written notice by the waterworks department of the termination of such ownership or occupancy. All such charges having been properly billed to the owner or occupant of any premises served and not paid may be recovered by the city in a civil action in any court of competent jurisdiction against either the owner or the occupant or both of them."

Meyer contends that, because no statute specifically authorizes a municipality to charge owners of property for water used by their vendees or tenants, the City was not authorized to enact Section 33–47. In support of this argument, Meyer correctly points out that a municipality is purely a creature of statute, having only those powers expressly or impliedly conferred by statute or essential to effectuate the purposes of its creation. *Lang v. City of Cavalier*, 59 N.D. 75, 228 N.W. 819 (1930). Meyer relies upon *Lang* for the proposition that, in defining a municipal corporation's powers, "the rule of strict construction applies, and any doubt as to their existence or extent must be resolved against the corporation." *Lang, supra*, 59 N.D. at 84, 228 N.W. at 822.

■ Meyer, however, ignores the remainder of *Lang* and its progeny, which make it clear that the rule of strict construction applies only to the determination of the existence of the power, and does not restrict the municipality's discretion in selecting the manner and means of exercising its powers:

"In defining municipal powers, the rule of strict construction applies. *Lang v. City of Cavalier*, 59 N.D. 75, 228 N.W.

819 (1930). Once a municipality's powers have been determined, however, 'the rule of strict construction no longer applies, and the manner and means of exercising those powers where not prescribed by the Legislature are left to the discretion of the municipal authorities.' *Id.*, 228 N.W. at 822. Leaving the manner and means of exercising municipal powers to the discretion of municipal authorities implies a range of reasonableness within which a municipality's exercise of discretion will not be interfered with or upset by the judiciary. *See, e.g., Tayloe v. City of Wahpeton*, 62 N.W.2d 31, 35 (N.D.1953) (courts will not declare ordinances invalid unless they are 'clearly arbitrary, unreasonable and without relation to public health, safety, morals or public welfare.'); *Marks v. City of Mandan*, 70 N.D. 474, 296 N.W. 39, 45 (1941) (reasonable exercise of legislative discretion 'does not invade constitutional rights of general taxpayers').... " *Haugland v. City of Bismarck*, 429 N.W.2d 449, 453–454 (N.D.1988).

Applying the rule of strict construction, Section 40–05–01(36), N.D.C.C., clearly grants to municipal corporations the general authority to maintain a public water system and "to fix and regulate the rates, use, and sale of water." The City's determination of which persons or entities will be held liable for water furnished to a particular geographic location is, we believe, a matter encompassing a "manner and means of exercising" that general authority. See *Haugland, supra*. As such, it is a matter within the discretion of municipal authorities which will not be overturned by the judiciary absent an abuse of discretion. *Haugland, supra*.

■ Once it is determined that the municipality has the general authority to regulate a certain subject matter, the burden is upon the party challenging an ordinance to demonstrate how that authority has been exceeded. *Tayloe v. City of Wahpeton*, 62 N.W.2d 31 (N.D.1953). The ordinance is imbued with a presumption of validity, and a court will not declare the ordinance invalid unless it is "clearly arbitrary, unreasonable and without relation to public health, safety, morals or public welfare." *Tayloe, supra*, 62 N.W.2d at 35.

■ Numerous cases from other jurisdictions have upheld similar ordinances based upon general statutory authorization to maintain a public water system. See, e.g., *Puckett v. City of Muldraugh*, 403 S.W.2d 252 (Ky.1966); *City of East Grand Forks v. Luck*, 97 Minn. 373, 107 N.W. 393 (1906); *City of Maryville v. Cushman*, 363 Mo. 87, 249 S.W.2d 347 (1952); *Pfau v. City of Cincinnati*, 142 Ohio St. 101, 50 N.E.2d 172 (1943); *Morrical v. Village of New Miami*, 16 Ohio App.3d 439, 476 N.E.2d 378 (1984). We conclude that the ordinance is not clearly unreasonable or arbitrary, and that the City was authorized to enact it.[1]

Meyer asserts that the trial court erred in relying upon Section 40–05–01.1, N.D. C.C., to support its conclusion that the City was authorized to enact Section 33–47. Section 40–05–01.1 provides:

"*Assessment of costs of work done necessary for the general welfare.* Whenever it becomes necessary for the general welfare, public health, fire protection, or public safety to order an owner or occupant of property to do certain work provided for by ordinance, and such owner or occupant refuses to conduct or comply with such order, the work may be done by the municipality and the owner or occupant of such property billed for the same by the municipality, or whenever a municipality for the general welfare, public health, fire protection, or public safety establishes by ordinance and maintains and operates a garbage and

---

**1.** Meyer also asserted for the first time at oral argument that the City should be estopped from collecting the delinquent water charges from him as an owner because it failed to shut off the water, as authorized by ordinance, when the delinquencies first began. He argues that the City cannot continue to supply water to a delinquent occupant indefinitely and then seek payment from the owner of the property.

This issue was not directly raised in the trial court nor in the briefs on appeal and was not considered by the trial court. We therefore do not consider it. See, e.g., *Farmers State Bank of Leeds v. Thompson*, 372 N.W.2d 862 (N.D.1985).

rubbish collection and removal system, the cost of such service may be charged to the owner or occupant of the property served. If such bill is not paid when due, the amount thereof may be assessed against the premises on which such work is done, or for which the service is rendered, and collected and returned in the same manner as other municipal taxes are assessed, certified, collected, and returned. This section shall not be construed to limit or affect in any manner any methods which now or in the future may be used for the collection of costs incurred by the municipality for the purposes set forth in this section, but the remedies provided for herein shall be in addition to such methods."

Because we have concluded that Section 40–05–01(36), N.D.C.C., provides statutory authority for the ordinance, we need not consider the trial court's reliance upon this additional statutory authority.

■ Meyer asserts that, even if the ordinance is valid, he was not an "owner" of the property. Section 1–2 of the Dickinson City Code defines "owner":

"*Owner.* Applied to a building or land, includes any part owner, joint owner, tenant in common, tenant in partnership or joint tenant of the whole or a part of such building or land."

Meyer, as vendor under the contract for deed, held legal title to the property. We find no error in the trial court's conclusion that Meyer was an owner of the property under the ordinances of the City.

Meyer contends that Section 33–47 of the Dickinson City Code violates due process under the State and Federal constitutions. This argument was not argued to nor ruled upon by the trial court in the cross-motions for summary judgment on the City's counterclaim. Meyer's reply brief on appeal includes an abbreviated, cursory argument on this issue. It contains no detailed constitutional analysis or reasoning. We have often advised that one who attacks a legislative enactment on constitutional grounds should bring up the heavy artillery or forego the attack entirely. See, e.g., *Miller v. North Dakota Crime Victims Rep-* *arations Board,* 448 N.W.2d 197 (N.D. 1989); *Southern Valley Grain Dealers Assn. v. Board of County Commissioners,* 257 N.W.2d 425 (N.D.1977). Nothing in Meyer's argument persuades us that the ordinance is unconstitutional.

■ On its cross-appeal, the City seeks reversal of that part of the judgment which holds that Section 33–48 of the Dickinson City Code is not authorized by statute. Section 33–48 gives the City a lien against the subject property for water charges and permits delinquent water charges to be assessed as taxes against the property:

"*Sec. 33–48. Charges to constitute lien on premises; assessment and collection of lien.*

"All water and sewerage charges shall constitute liens upon the respective lots, tracts and premises receiving sewerage service; and all such charges which have been properly billed to the owner or occupant of the premises served and which are more than thirty days past due on September thirtieth of each year shall be certified by the city auditor to the county auditor between the first and the tenth day of October of each year; and the city auditor, in so certifying such charges, shall specify the amount thereof, the description of the premises served and the name of the owner thereof; and the amount so certified shall be extended by the county auditor on the tax rolls against such premises and collected by the county treasurer and paid to the city treasurer in the same manner as other county and municipal taxes are assessed, certified, collected and returned."

The same rationale that supports our conclusion that the City was empowered to enact Section 33–47 compels us to conclude that the enactment of Section 33–48 was also authorized by statute. Because the City is given the general power to maintain a public water system and to fix and regulate rates and sale of water, it necessarily follows that the City is accorded broad discretion in determining the manner and means of exercising that power. See *Haugland, supra.* The City's determination that a lien for delinquent water bills

may be placed upon the property receiving the water service is a matter encompassing a "manner and means of exercising" the general authority to set rates and conditions for the sale of water. Meyer has failed to sustain his burden of demonstrating how that statutory authority has been exceeded.[2] See *Tayloe, supra.* We therefore conclude that the ordinance is not clearly unreasonable or arbitrary, and that the City was authorized to enact it.

That part of the judgment of the district court holding Meyer liable for the delinquent water bills is affirmed; that part of the judgment invalidating Dickinson's tax-lien ordinance is reversed.

ERICKSTAD, C.J., and GIERKE, MESCHKE and LEVINE, JJ., concur.

---

**2.** Meyer has not argued that Section 40–05–01.1, N.D.C.C., which specifically grants authority to municipalities to charge owners and occupants for garbage collection and to assess delinquencies for garbage collection against the property, prohibits by negative implication such remedies for water service. In any event, we do not read Section 40–05–01.1 as a limitation upon the powers granted to municipalities in Section 40–05–01.