A & H SERVICES, INC., f/k/a A &
H Waste Services, Inc., Plaintiff
and Appellant,

v.

CITY OF WAHPETON, North Dakota, a
Municipal Corporation, Defendant
and Appellee.

Civ. No. 930197.

Supreme Court of North Dakota.

April 20, 1994.

Mark A. Meyer (argued), of Meyer Law Firm, Wahpeton, for plaintiff and appellant.

Bruce D. Quick (argued), of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for defendant and appellee.

LEVINE, Justice.

A & H Services, Inc. [A & H] appeals from a district court summary judgment dismissing its claims against the City of Wahpeton. We affirm.

Since 1975, the City has contracted with Waste Management Partners of Southeast North Dakota [WMP][1] for residential, commercial and industrial waste removal. WMP hauls Wahpeton's waste to a landfill in Gwinner. In 1988, the owners of A & H contacted the city attorney about providing garbage removal for commercial businesses in Wahpeton. They were advised that the existing ordinances did not prohibit A & H from providing that service. A & H began providing service to numerous commercial businesses, hauling the waste to the Casselton landfill.

On December 19, 1988, the City Council adopted an ordinance regulating waste hauling. The ordinance required that waste haulers be licensed by the City, and set out qualifications. The ordinance further said:

"The City Council has the discretion to limit the number of such licenses issued as it determines necessary for the promotion and health and welfare of the City and its residents."

A & H, in partnership with Murphy Services, Inc., submitted a license application. The application proposed to haul waste to Casselton, Rolla, or Fergus Falls, Minnesota. On March 6, 1989, the City Council denied the application. The Council listed five reasons, related to the qualifications specified in the ordinance, for denying the license: (1) unsatisfactory arrangements for a disposal site;
(2) unsatisfactory financial information; (3) unsatisfactory provisions for insurance coverage; (4) failure to provide for a waste transfer station; and (5) failure to provide a performance bond and a pollution liability bond. WMP, which had also applied, was issued a temporary 90-day license, to be extended upon WMP's filing the proper bonds.

A & H submitted a new application, without Murphy Services, on December 13, 1991.[2] The City Council denied this application on January 6, 1992, expressing concern about the City's potential expanded liability under federal law if waste from Wahpeton were hauled to additional disposal sites.

A & H sued the City, seeking issuance of a license, monetary damages, and an injunction preventing the City from enforcing the ordinance. Following discovery, the district court granted summary judgment dismissing all claims. A & H appealed.

Summary judgment under Rule 56, N.D.R.Civ.P., is a procedural device for promptly and expeditiously disposing of a controversy without a trial if there is no genuine issue of material fact, or if the law is such that resolution of the factual disputes will not alter the result. *Littlefield v. Union State Bank*, 500 N.W.2d 881, 883 (N.D.1993). We view the evidence in the light most favorable to the party opposing the motion, and give to that party the benefit of all favorable inferences that we can reasonably draw from the evidence. *Ellingson v. Knudson*, 498 N.W.2d 814, 817 (N.D.1993). Although the party seeking summary judgment has the burden of showing that there is no genuine issue of material fact, the opposing party may not simply rely upon the pleadings or upon unsupported, conclusory allegations. *Peterson v. Zerr*, 477 N.W.2d 230, 234 (N.D. 1991). The resisting party must present competent admissible evidence which raises an issue of material fact and must, if appro-

1. Waste Management Partners has changed names over the years, and also has other affiliated entities involved in its overall waste disposal and landfill business. For sake of brevity, we will refer to these entities collectively as WMP.

2. In the interim, Murphy Services had submitted its own individual application for a license. The City Council denied the license on February 5, 1990. A & H has attempted to raise issues relating to the denial of Murphy Services' application. Murphy Services is not a party to this litigation, and the denial of its individual application is not an issue on this appeal.

priate, specifically draw the court's attention to relevant evidence in the record. *Peterson v. Zerr, supra,* 477 N.W.2d at 234. The opposing party must also explain the connection between the factual assertions and the legal theories in the case, and may not leave to the court the chore of divining what facts are relevant, or why facts are relevant, to the claim for relief. *Peterson v. Zerr, supra,* 477 N.W.2d at 234.

Even if a factual dispute exists, summary judgment is appropriate if the law is such that resolution of the factual disputes will not change the result. *First State Bank of Goodrich v. Oster,* 500 N.W.2d 593, 598 (N.D. 1993). In determining whether summary judgment is warranted, the court must consider the substantive standard of proof at trial. *Ellingson v. Knudson, supra,* 498 N.W.2d at 817.

▌ A & H asserts that the City Council's enactment of the waste-hauling ordinance was arbitrary, capricious and unreasonable, and seeks to enjoin enforcement of the ordinance. A & H concedes that ordinances regulating the collection and disposal of waste fall within the City's police power. *See Tayloe v. City of Wahpeton,* 62 N.W.2d 31, 35 (N.D.1953). Once it is determined that a city has the general authority to regulate a certain subject matter, the burden is upon the party challenging an ordinance to demonstrate how that authority was exceeded. *Meyer v. City of Dickinson,* 451 N.W.2d 113, 116 (N.D.1990). The ordinance is presumed valid, and a court will not declare the ordinance invalid unless it is "clearly arbitrary, unreasonable and without relation to public health, safety, morals or public welfare." *Meyer v. City of Dickinson, supra,* 451 N.W.2d at 116; *Tayloe v. City of Wahpeton, supra,* 62 N.W.2d at 35; *see also City of Minot v. Central Avenue News, Inc.,* 308 N.W.2d 851, 858 (N.D.), *appeal dismissed,* 454 U.S. 1117, 102 S.Ct. 961, 71 L.Ed.2d 105 (1981).

A & H asserts that the ordinance is arbitrary and unreasonable because it fails to set out specific criteria for granting a license. In support of this argument, A & H relies almost exclusively upon *Mini Mart, Inc. v. City of Minot,* 347 N.W.2d 131 (N.D.1984).

Mini Mart was one of two applicants for two available retail beer licenses. Mini Mart's application complied with all of the sanitation, safety and health requirements imposed by the city's ordinances. The city had retained discretion through its ordinance to deny a license if "the structure is not sufficient for the general welfare and safety of the general public." *Mini Mart, supra,* 347 N.W.2d at 134 n. 1. The City Council members expressed concerns that the store was frequented by minors, that it was close to a college campus, that gasoline was also sold there, and that the single attendant for all phases of the convenience store's operations would be unable to adequately police beer sales to minors. The city denied the license on the basis of these unwritten ad hoc criteria, wholly unrelated to the criteria listed in the ordinance.

Our discussion on appeal centered upon the city's failure to reserve in the ordinance its statutorily granted discretion in granting or denying liquor licenses. Commenting upon *Thielen v. Kostelecky,* 69 N.D. 410, 287 N.W. 513 (1939), we stated:

> "Thus, the Court in *Kostelecky* recognized that municipalities have been given the power by the State to exercise judgment and discretion in the granting or denial of liquor licenses. However, the Court also pointed out that, in order to make the grant of such power effectual, the municipality must enact ordinances reserving the legislative grant of discretion and prescribing reasonable rules and standards to govern the exercise of that discretion."

*Mini Mart, supra,* 347 N.W.2d at 139.

A & H urges that the ordinance here fails to adequately reserve the City's discretion because it fails to spell out specific requirements for determining whether a license should be granted. However, we imposed no such requirement in *Mini Mart,* and cautioned against such a result:

> "We do not intend to imply that a municipal liquor licensing ordinance scheme must specifically address all conceivable factual variations which might arise and which would legitimately and reasonably

support a decision that a particular license ought not issue. We hold only that a municipality must reserve its legislative grant of discretion through the use of written criteria which both adequately inform applicants of the standards and policies to be contemplated by the municipality, and adequately guide the licensing authority in arriving at its decision."

*Mini Mart, supra*, 347 N.W.2d at 141. In *Mini Mart, supra*, 347 N.W.2d at 139, we quoted with approval from *Kostelecky, supra*, 287 N.W. at 516, that there is no "intention that the governing body of a city shall serve merely as a rubber stamp for the approval of applications for licenses." The City would be left as a mere "rubber stamp" if, as A & H urges, the ordinance must spell out, chapter and verse, the specific requirements for granting or denying a license.

■ The ordinance in this case satisfies the requirements of *Mini Mart:* it reserves the legislative grant of discretion through written criteria that adequately guide applicants and the licensing authority. It contains specific provisions detailing the qualifications for a license and setting out the application process. The required qualifications include good moral character, financial stability, access to a suitable disposal site, insurance coverage, and bonding. A & H has failed to demonstrate that the ordinance is clearly arbitrary, unreasonable, and without relation to the public health, safety, morals or welfare.

*Mini Mart* is also distinguishable on other grounds. The applicant in *Mini Mart* met *all* requirements enumerated in the ordinance. In this case, A & H failed to fulfill several requirements, including specific insurance and bonding requirements. Furthermore, A & H was not the only qualified applicant for an available license, a circumstance we deemed significant in *Mini Mart:*

"There is a significant difference between a situation where there are several applicants which have met the requirements set forth by ordinance and a decision must be made between them for one available license, and where, as in the instant case, the sole applicant has met the criteria set forth by ordinance for the only

available license. The former situation necessarily requires that the municipality exercise additional discretion in order to choose the recipient of the available license and to therefore remain within the numerical limits on liquor licenses the municipality has set."

*Mini Mart, supra*, 347 N.W.2d at 140.

■ A & H also asserts that, even if the ordinance is valid, the decision to deny the license was arbitrary and unreasonable. Our review of a municipality's adoption, interpretation and application of its own ordinances is strictly limited by the doctrine of separation of powers. A municipality has broad discretion to determine the manner and means of exercising the powers delegated to it by state law. *Ebach v. Ralston*, 469 N.W.2d 801, 804 (N.D.1991); *Peterson v. McKenzie County Public School District No. 1*, 467 N.W.2d 456, 458 (N.D.1991). Courts will not substitute their judgment for that of the municipality's governing body in interpreting or applying ordinances unless an abuse of discretion is clearly shown. *Sloven v. Olson*, 98 N.W.2d 115, 124 (N.D.1959). To establish an abuse of discretion, it must be shown that the municipality's governing body acted arbitrarily, oppressively or unreasonably. *E.g., Pic v. City of Grafton*, 339 N.W.2d 763, 765 (N.D. 1983).

■ In support of its argument, A & H addresses each reason given by the City in denying the two applications, asserting that the City was mistaken in each instance in the conclusions it reached. A & H demonstrates a fundamental misunderstanding of the nature of our review over acts of local governing bodies. A & H's argument is essentially that, although the City gave reasons for denying the license, those reasons were not *good* reasons. It is not our function, however, to second guess the City Council and, with the benefit of hindsight, determine whether its assessment of the various factors was right or wrong, wise or unwise. The very nature of separation of powers requires that those decisions be left to the local governing body, with judicial interference appropriate only when the decisionmaking process has been so capricious and devoid of logic that it rises to the level of the very demand-

ing substantive standard: arbitrary, oppressive or unreasonable. *See Ellingson v. Knudson, supra,* 498 N.W.2d at 817. That standard has not been met here.

A & H also asserts that, at the time the second application was denied, one of the City Council members was employed by WMP. There is a factual dispute whether this member actually participated in the voting to deny A & H a license: the City records show that he voted "aye" on the motion to deny the license, but he testified in his deposition that he abstained from voting. The motion passed unanimously. A & H asserts that this raises a factual issue on bias and the validity of the proceedings.

We addressed the issue of council members abstaining from voting for conflicts of interest in *Northwestern Bell Telephone Co. v. Board of Commissioners,* 211 N.W.2d 399 (N.D.1973). The Fargo City Commission was considering an ordinance imposing a tax on Northwestern Bell's revenue. Two of the five city commissioners were Bell employees, and they "passed" their votes on the ordinance. Of the remaining commissioners, two voted in favor and one voted against. The trial court concluded that the ordinance required approval of three commissioners, and held the ordinance invalid. The issues on appeal focused upon the effect of the "passed" votes. Noting that there was no authority by statute or ordinance to abstain from voting for a conflict of interest, we concluded that "an inference can be drawn that the member must vote." *Northwestern Bell, supra,* 211 N.W.2d at 402. We further stated that "[t]he duty to vote is present if the member is present." *Northwestern Bell, supra,* 211 N.W.2d at 403; *see also Opdahl v. Zeeland Public School District No. 4,* 512 N.W.2d 444 (N.D.1994) (allegations that school board members had prejudged a teacher's nonrenewal). Because there was no authority for the members to abstain from

voting, we adopted the rule that a "passed" vote is counted as a vote with the majority of those who do vote. *Northwestern Bell, supra,* 211 N.W.2d at 404; *see also* 4 McQuillin, Municipal Corporations § 13.32 (3d ed. 1992).

▮ A & H has not cited any statute or other authority that would require, or permit, a council member to abstain from voting for a conflict of interest.[3] Accordingly, it makes no difference whether he abstained or not. If he did, his vote should have been counted with the unanimous majority to deny the license. Because resolution of the factual dispute will not affect the outcome of the case, it is not a genuine issue of material fact which would make entry of summary judgment inappropriate. *See First State Bank of Goodrich v. Oster, supra,* 500 N.W.2d at 598.

Finally, A & H argues that our decision in *Buegel v. City of Grand Forks,* 475 N.W.2d 133 (N.D.1991), raises a factual issue whether the City should pay damages for A & H's loss of use of trucks and equipment it purchased to provide service in Wahpeton. In *Buegel,* the city enacted an ordinance, at Buegel's request, to permit firing ranges within the city. The ordinance did not restrict the types of weapons that could be used at the firing range. Buegel was granted a permit to operate a firing range, and purchased and renovated a building for that purpose. When Buegel's business plans were made public, however, citizens expressed concerns over the use of automatic weapons at the firing range. During the term of Buegel's original permit, the city amended the ordinance to prohibit automatic weapons.

Buegel sued for inverse condemnation, arguing that the amendment decreased the value of his property. Although noting that a city generally need not compensate a landowner when a valid police power regulation

---

3. Section 40-13-05, N.D.C.C., says that municipal officers should not have a personal interest in any "contract, work, or business of the municipality." However, the statute applies only to municipalities with a population of ten thousand or more in the last federal decennial census. We note that Wahpeton's population was less than ten thousand in the 1990 census. *See also* Section 12.1-13-03, N.D.C.C. (public servants may not have an individual interest in a sale, lease, or contract within their official authority); Section 40-13-05.1, N.D.C.C. (municipal officers must disclose personal interest in contracts requiring expenditure of municipal funds); Section 48-02-12, N.D.C.C. (public officers may not have pecuniary interest in any public contract within their authority).

decreases the value of property, we recognized an exception where the city amended the ordinance and effectively altered Buegel's permit during its term. In so holding, we stressed that the ordinance was "tailor-made" for Buegel, and was not expected to have a broad application. *Buegel, supra,* 475 N.W.2d at 135. We carefully limited our holding:

> "[T]he close relationship between Buegel's proposed use, his participation in the City's response to his proposal, and the resulting ordinance present the 'rare and unusual circumstances' which would result in an 'obvious injustice,' *Blocker Drilling [Canada, Ltd. v. Conrad],* 354 N.W.2d [912,] 923 [ (N.D.1984) ] (VandeWalle, J., concurring specially), should the City not be required to pay Buegel for his damages as a cost for protecting the public. Nor should this opinion be read as saying that a city must always compensate an affected landowner when the city changes an ordinance altering a use permit in response to changed circumstances which raise safety concerns not identified at the time of the city's original action, or as a result of additional information warranting a different response to a previously identified risk. Rather, we uphold the imposition of damages against a city which restricts an existing permit and, when challenged by the permit holder, offers no evidence of the necessity for immediate action. Finally, this opinion does not affect a city's power to impose new restrictions upon, or even refuse to renew, a license at the end of its term."

*Buegel, supra,* 475 N.W.2d at 135.

██ *Buegel* is clearly distinguishable. There is no evidence that an ordinance was "tailor-made" to permit A & H to engage in waste hauling, then subsequently changed after a permit had been issued. A & H had no vested right to provide waste-hauling service. An applicant for a license or permit does not have vested rights, but a mere expectancy. *Fairmount Township Board of Supervisors v. Beardmore,* 431 N.W.2d 292, 295 (N.D.1988). *Buegel* is specifically limited to situations where a city amends a specially tailored ordinance, placing restrictions on an existing permit, with no evidence of necessity for immediate action. A & H has presented no evidence demonstrating a genuine issue of material fact on this assertion.

██ A & H has raised numerous additional issues. Some issues were not adequately raised below or were not adequately briefed and argued on appeal, and will not be addressed. *See In Interest of A.G.,* 506 N.W.2d 402, 403–404 (N.D.1993) (issues not adequately raised in trial court will not be considered on appeal); *Effertz v. North Dakota Workers' Compensation Bureau,* 481 N.W.2d 218, 223 (N.D.1992) (one who raises a constitutional issue "should bring up his heavy artillery or forego the attack entirely"). We have considered the other remaining issues but they do not affect our decision.

We conclude that A & H has failed to demonstrate a genuine issue of material fact that would preclude summary judgment. The summary judgment dismissing A & H's claims is affirmed.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.