1999 ND 104

**Ed ENNIS, Plaintiff and Appellant,**

v.

**CITY OF RAY, Defendant and Appellee.**

No. 980300.

Supreme Court of North Dakota.

June 18, 1999.

Rehearing Denied July 13, 1999.

Ed Ennis, Williston, Pro se.

John H. MacMaster, MacMaster Law Firm, Ltd., Williston, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Ed Ennis appealed from a judgment awarding the City of Ray a judgment for unpaid garbage collection fees and a water connection fee. We affirm.

I

[¶ 2] Ennis purchased a home in Ray and began receiving water and sewer service from the City in July 1996. The City also billed Ennis $12.00 per month for garbage collection service. Ennis protested the monthly garbage fee, stating he wished to handle his own garbage removal. Although the City Auditor initially had difficulty locating the ordinance which provided for mandatory garbage removal service for all residents, the ordinance was eventually found. Ennis was advised by letter on December 13, 1996, that his water service would be shut off if he failed to

pay the delinquent garbage fees. When Ennis still refused to pay, his water was shut off.

[¶ 3] Ennis filed an action in small claims court alleging constitutional and statutory violations, and seeking compensatory and punitive damages. The City removed the action to district court and filed a counterclaim for the unpaid garbage fees and a $20.00 water connection fee Ennis had refused to pay when his water service was started in July 1996. Ennis subsequently moved for dismissal of his complaint without prejudice, and sought a temporary restraining order requiring the City to reconnect his water. The court dismissed Ennis's claims without prejudice and granted the motion for a temporary restraining order.

[¶ 4] On July 13, 1998, the district court granted the City's motion for summary judgment on its counterclaim. Judgment was entered against Ennis for $92.00 for the unpaid garbage and water connection fees, plus statutory costs and interest.

## II

[¶ 5] Summary judgment is a procedural device for the prompt and expeditious disposition of a controversy without a trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *Smith v. Land O'Lakes, Inc.*, 1998 ND 219, ¶ 9, 587 N.W.2d 173. In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion, who must be given the benefit of all favorable inferences which can reasonably be drawn from the evidence. *Stanley v. Turtle Mountain Gas & Oil, Inc.*, 1997 ND 169, ¶ 6, 567 N.W.2d 345. Questions of law are fully reviewable on appeal. *Id.; Keator v. Gale*, 1997 ND 46, ¶ 7, 561 N.W.2d 286.

## III

[¶ 6] Ennis has raised issues which relate solely to his original claims in this action, particularly the City's authority to shut off his water service for nonpayment of the garbage fees. The validity of the City's authority to shut off water service does not affect the City's authority to collect fees for garbage service. Ennis's complaint was dismissed on his own motion, and the issues raised therein are not properly before us on this appeal. We therefore do not consider them.

## IV

[¶ 7] Ennis asserts the City is prohibited from making garbage service mandatory to all residents, and may not charge fees for garbage service if a resident declines the service. The relevant portions of the ordinance provide:

*Section 1: UTILITY ESTABLISHED—* There is herewith created a Public Utility of the City of Ray to be known as Waste Collection and Disposal Utility. Such utility shall be responsible to carry out the provisions of this ordinance and shall supervise and arrange for a garbage collection system, disposal grounds, and landfill disposal system. The utility shall have the power and authority to purchase, contract, lease or otherwise acquire in the name of the City of Ray such lands as are necessary for disposal of garbage; to purchase, lease or hire such equipment as may be necessary.

. . . .

*Section 12: GARBAGE CHARGES AND COLLECTION—*The City Auditor of Ray is hereby authorized to charge for this and remittance shall be paid to the City Auditor upon monthly bills from the said department.

No person within the City of Ray shall be permitted to refuse such garbage service and the failure to receive such service shall not exempt him from payment of charges herein before set forth . . . .

Ennis asserts the mandatory nature of the service and the authorization to collect the

fee even if the resident refuses service violate due process and exceed the statutory powers of municipalities under North Dakota law.

### A

[¶ 8] It is well settled that collection and disposal of waste fall within a municipality's police power to protect public health, safety, and welfare. *A & H Services, Inc. v. City of Wahpeton,* 514 N.W.2d 855, 857 (N.D.1994); *Tayloe v. City of Wahpeton,* 62 N.W.2d 31, 35 (N.D. 1953). Ordinances regulating waste removal therefore carry a strong presumption of validity:

> Once it is determined that a city has the general authority to regulate a certain subject matter, the burden is upon the party challenging an ordinance to demonstrate how that authority was exceeded. *Meyer v. City of Dickinson,* 451 N.W.2d 113, 116 (N.D.1990). The ordinance is presumed valid, and a court will not declare the ordinance invalid unless it is "clearly arbitrary, unreasonable and without relation to public health, safety, morals or public welfare." *Meyer v. City of Dickinson, supra,* 451 N.W.2d at 116; *Tayloe v. City of Wahpeton, supra,* 62 N.W.2d at 35. . . .

*A & H Services,* at 857. When a municipality has general authority to regulate a particular subject matter, the manner and means of exercising those powers, where not specifically prescribed by the legislature, are left to the discretion of the municipal authorities. *Meyer,* at 116; *Haugland v. City of Bismarck,* 429 N.W.2d 449, 453–54 (N.D.1988). Leaving the manner of exercising municipal powers to the discretion of municipal authorities "implies a range of reasonableness within which a municipality's exercise of discretion will not be interfered with or upset by the judiciary." *Meyer,* at 116 (quoting *Haugland,* at 454).

[¶ 9] The overwhelming majority of cases addressing a city's authority to impose mandatory garbage service and fees have upheld the ordinances against constitutional and statutory challenges. *See, e.g., Martin v. City of Trussville,* 376 So.2d 1089, 1093–95 (Ala.Civ.App.1979); *City of Glendale v. Trondsen,* 48 Cal.2d 93, 308 P.2d 1, 6 (1957); *Stone v. Town of Mexico Beach,* 348 So.2d 40, 42 (Fla.Dist.Ct.App. 1977); *Zerr v. Tilton,* 224 Kan. 394, 581 P.2d 364, 371 (1978); *Cassidy v. City of Bowling Green,* 368 S.W.2d 318, 319–20 (Ky.1963); *Craig v. City of Macon,* 543 S.W.2d 772, 774–75 (Mo.1976); *City of Hobbs v. Chesport, Ltd.,* 76 N.M. 609, 417 P.2d 210, 214 (N.M.1966); *City of Portsmouth v. McGraw,* 21 Ohio St.3d 117, 488 N.E.2d 472, 475 (1986); *City of Princeton v. Stamper,* 195 W.Va. 685, 466 S.E.2d 536, 539 (1995). *But see Village of Winside v. Jackson,* 250 Neb. 851, 553 N.W.2d 476, 480–81 (1996). The majority view is aptly expressed in 7 Eugene McQuillin, *Law of Municipal Corporations* § 24.250 (3d rev. ed.1997) (footnotes omitted):

> Municipal corporations frequently perform the service of collecting and removing all garbage, trash, and similar substances, and prohibit any other persons from engaging in that business. A municipality may do this under its police or general power to provide for the health of its inhabitants and to prevent and abate nuisances. . . .
>
> A special charge, tax, or assessment may be made by a municipal corporation, reasonably commensurate to the cost of removal of garbage and refuse. . . . [O]ne cannot avoid paying a city's garbage collection fee by hauling one's own garbage since a city can constitutionally require everyone to use the city's garbage collection service in the interest of uniform sanitation. A property owner cannot opt out of a municipal solid waste disposal system by simply not requesting the service.

[¶ 10] Notwithstanding the numerous authorities holding that mandatory garbage services and fees are valid exercises of a municipality's police power, Ennis asserts the City's ordinance is prohibit-

ed by proscriptions on municipal authority under N.D.C.C. §§ 40–05–01.1 and 40–34–05. Section 40–05–01.1, N.D.C.C., provides:

> [W]henever a municipality for the general welfare, public health, fire protection, or public safety establishes by ordinance and maintains and operates a garbage and rubbish collection and removal system, the cost of such service may be charged to the owner or occupant of the property served.

Similarly, N.D.C.C. § 40–34–05 authorizes municipalities to own and operate garbage disposal plants, and to "establish just and equitable rates and charges to be paid for the use of ... such garbage disposal plant or system ... by a person ... whose premises are served thereby." Ennis asserts his property is not "served" by the City's garbage collection utility because he disposes of his own garbage. Relying upon *Village of Winside v. Jackson,* 250 Neb. 851, 553 N.W.2d 476 (1996), he therefore asserts the ordinance violates N.D.C.C. §§ 40–05–01.1 and 40–34–05.

[¶ 11] In *Winside,* the court considered a Nebraska statute which authorized cities to provide facilities and systems for solid waste disposal and to charge fees for use of such facilities and systems "by each person whose premises are served by the facility or system." *Winside,* 553 N.W.2d at 479 (quoting Neb.Rev.Stat. § 13–2020(4)). The city had enacted an ordinance creating a mandatory garbage collection service and authorizing garbage fees against all residences and buildings within the city's corporate limits. Jackson, who owned a four-unit apartment complex in the city, refused the city's garbage service and disposed of the garbage from the complex himself. The court concluded that, because Jackson was not using the city's garbage services, the property was not "served" thereby and he could not be charged for it. The court held the ordinance went beyond the statutory authorization and was "invalid insofar as it requires residents to pay a fee for garbage

services they do not use." *Winside,* at 480.

[¶ 12] We believe the *Winside* court's superficial interpretation of what constitutes property "served by" the service is far too narrow, and fails to take into consideration the purpose and public policy underpinnings of a city's police power to regulate the collection and disposal of solid waste. As the court explained in *Craig v. City of Macon,* 543 S.W.2d 772, 774–75 (Mo.1976):

> [A]ppellants contend that because they do not have their garbage removed, they do not use the service for which they are billed, and therefore, the ordinances are unreasonable. Appellants, however, erroneously assume that the only benefit conferred by the statute is the removal of one's own garbage. The legislative intent and the purpose of the city's ordinances are not primarily to remove waste from the community for the convenience of residents, but rather to protect the public health by regulating the collection and disposal of garbage, and thereby minimizing or eliminating a source of disease. Although the appellants may not have waste to be collected, the regulatory scheme protects the entire public, not just those who have waste for disposal, by responsibly removing a source of disease from the community. As we said in *Lakewood Park Cemetery Ass'n v. Metropolitan St. Louis Sewer Dist.,* 530 S.W.2d 240, 247 (Mo. banc 1975) (per curiam) quoting *Whitsett v. City of Carthage,* 270 Mo. 269, 193 S.W. 21, 24 (1917): " 'The public health is menaced and endangered by the aggregation of filth and refuse of the entire district, and is not limited to accumulations thereof upon or about each separate lot or tract of ground located therein.' "

Similarly, the court in *City of Portsmouth v. McGraw,* 21 Ohio St.3d 117, 488 N.E.2d 472, 475 (1986), explained:

> This court may, and does, take judicial notice of the effect of garbage on the

public health. Without the ability to require every resident of the city upon whose premises garbage or refuse accumulates to conform to a uniform regulation, the city would be unable to tackle all the health problems which would result from a helter-skelter approach of allowing each citizen to individually strew his garbage throughout the city as he sees fit. We hold that Portsmouth City Council's requirement that each family or individual who maintains living quarters in the city, on which garbage or refuse are created, use the city's garbage collection service is a proper exercise of the city's powers of self-regulation granted under the home rule provision of Ohio's Constitution. This statutory scheme is really and substantially related to protection of the public from disease and, therefore, to the public health and welfare.

See also Martin v. City of Trussville, 376 So.2d 1089, 1094 (Ala.Civ.App.1979); City of Glendale v. Trondsen, 48 Cal.2d 93, 308 P.2d 1, 6 (1957); City of Hobbs v. Chesport, Ltd., 76 N.M. 609, 417 P.2d 210, 214 (N.M.1966).

[¶ 13] A further purpose served by mandatory fees is to defray costs and ensure financial stability of the system for the benefit of the entire community:

The appellants argue that because their refuse collection and disposal is not performed by the City of Princeton and they do not use the service for which they are billed, the Ordinance is unreasonable as it applies to them. The appellants fail to recognize that the municipal charge is not just for collecting and disposing of refuse from their places of residence. The sum of all charges are marshalled and designed to defray the expense of a systemic refuse disposal scheme within the City of Princeton. In other words, the purpose of the Ordinance is to protect the health, safety and welfare of the entire community.

. . . .

The City of Princeton has enacted an ordinance which is designed to address a public health problem, and the solution to the problem for the benefit of all citizens of Princeton binds the entire community to subsidize a uniform and efficient system of refuse collection and disposal.

City of Princeton v. Stamper, 195 W.Va. 685, 466 S.E.2d 536, 539–40 (1995); see also City of Hobbs, 417 P.2d at 214.

[¶ 14] As the rationale of these cases demonstrates, individual parcels of property within a city receive tangible benefits, and thereby are "served by" a city's garbage collection service, even if the owner refuses to have his own garbage collected by the city. In Zerr v. Tilton, 224 Kan. 394, 581 P.2d 364 (1978), property owners asserted an ordinance authorizing mandatory garbage service and fees violated a state statute which authorized levying of such fees upon "persons receiving the service." Id., at 371 (quoting Kan. Stat. Ann. § 65–3410(a)). Rejecting the owners' contention that they were not "persons receiving the service" because they refused the city's service and disposed of their own garbage, the court concluded:

"The plaintiffs' claim is that they don't receive the service and accordingly the above provision exempts them from the fees. Again, plaintiffs' construction is strained. The collection service is available to each plaintiff. Pickup service is furnished at least once a week to all persons who are billed. The fact that plaintiffs voluntarily chose not to avail themselves of the service is not susceptible of the construction that they are not 'receiving the service' or that fees are imposed or revenue used 'where such service is not provided.'"

Zerr, at 371.

[¶ 15] Similarly, in City of Princeton the state statute authorizing collection of fees for municipal services allowed collection of fees from "the users of such service." City of Princeton, 466 S.E.2d at 538 n. 4 (quoting W. Va.Code § 8–13–13). The

court rejected the contention that residents who refused the city's garbage collection service were not "users" of the service and could not be charged the fees:

The appellants attempt to emphasize that a service fee cannot be imposed against a non-user. The fallacy in this reasoning is that the appellants are users of the municipal service, in a real sense, regardless of how they choose to dispose of refuse because they receive the benefit from the general disposal system. All residents, regardless of how they personally choose to dispose of their refuse, receive a benefit in the collection and disposal of refuse from other premises in the community. The City of Princeton enacted the Ordinance under the plenary power and authority of W.Va.Code 8–13–13 (1971) and charges all residents the service fee because residents are the primary users of the refuse collection and disposal service.

*City of Princeton*, 466 S.E.2d at 539 (footnotes omitted); *see also Beard v. State*, 627 So.2d 1122, 1125 (Ala.Crim.App.1993) ("waste collection and disposal services are 'furnished' when the services have been provided, or made available to a potential customer such as the appellant, not when the services have been utilized by the customer").

[¶ 16] We agree with the reasoning of these cases. By analogy in determining the validity of special assessments for water and sewer improvements, we have held undeveloped property within city limits which "had the ability to get service" received significant benefits, in the form of improved fire protection service and enhanced opportunity for commercial and residential growth in the community, from a water and sewer improvement project. *Haman v. City of Surrey*, 418 N.W.2d 605, 607–09 (N.D.1988).

[¶ 17] We conclude an owner's property is "served" by a municipality's garbage collection service, even if the owner refuses the service, if collection is available and the property receives the tangible benefits of a uniform system of collection to protect the public health. Ennis is a member of the public whose health and safety is protected by the City's garbage collection service. Ennis and his property are, therefore, "served" by the City's service, and thus Ennis may properly be charged a fee for its maintenance. Accordingly, the ordinance did not exceed the City's authority under N.D.C.C. §§ 40–05–01.1 and 40–34–05. We therefore conclude the ordinance was not arbitrary, unreasonable, or unrelated to public health, safety, or welfare, and the City had the authority to impose mandatory garbage service and collect fees from Ennis.

## B

[¶ 18] Ennis also asserts the ordinance violates his right to substantive due process. This Court continues to recognize substantive due process as a constitutional standard. *Haff v. Hettich*, 593 N.W.2d 383, 1999 ND 94, ¶ 25; *City of Fargo v. Stensland*, 492 N.W.2d 591, 594 (N.D.1992). We reiterated our standard of review in such cases in *Haff*, at ¶ 25 (quoting *Stensland*, at 594):

When reviewing substantive due process arguments not involving fundamental rights, we look to see if the State acts in an arbitrary or unreasonable manner in exercising its police power.... To declare a statute unconstitutional on substantive due process grounds, "it must appear that the Legislature had no power to act in the particular matter or, having power to act, that such power was exercised in an arbitrary, unreasonable, or discriminatory manner and that the method adopted had no reasonable relation to attaining the desired result."

[¶ 19] Citing no supporting authority, Ennis asserts the ordinance violates his due process rights because he did not contract for the City's garbage collection service and derives no benefit therefrom. As we have previously concluded, Ennis derives substantial tangible benefits

from the City's mandatory garbage service. Numerous courts in other jurisdictions have rejected similar constitutional challenges, holding that ordinances establishing mandatory garbage collection service and fees are not arbitrary or unreasonable, and provide benefits to property owners who refuse the service. *See, e.g., Martin v. City of Trussville,* 376 So.2d 1089, 1094–95 (Ala.Civ.App.1979); *City of Glendale v. Trondsen,* 48 Cal.2d 93, 308 P.2d 1, 5–6 (1957); *Stone v. Town of Mexico Beach,* 348 So.2d 40, 42 (Fla.Dist.Ct. App.1977); *City of Hobbs v. Chesport, Ltd.,* 76 N.M. 609, 417 P.2d 210, 214 (N.M. 1966). As the court explained in *City of Hobbs,* 417 P.2d at 213–14:

> Defendant claims that to charge him for garbage assessments when no garbage was removed from his premises is a taking of his property without due process of law in violation of Article II, § 18 of the Constitution of New Mexico and the Fourteenth Amendment of the Constitution of the United States.
>
> The charges made are not just for removing garbage from defendant's premises. The sum to be collected under § 14–32–4, N.M.S.A.1953, is to "defray the expenses of such garbage collection and disposal." This involves the entire system—the general system authorized by § 14–32–3, N.M.S.A.1953.
>
> Defendant is a person who receives benefits from the general system. These benefits are in the removal of garbage from premises of adjoining property and in plaintiff's spraying of the alleys and garbage cans to prevent flies. The charges made include cost of the services provided to property of others from which defendant's property benefits. Thus it is not true that defendant did not receive any benefits in connection with the charges made.
>
> . . . .
>
> Defendant was not deprived of his property without due process by being required to pay the assessments. He received benefits in the collection and

disposal of garbage from other premises in the community. The problem involved being a health problem, its solution bound defendant as well as other members of the community.

We conclude that the ordinance did not violate Ennis's substantive due process rights.

### V

[¶ 20] The remaining issues raised by Ennis either are not properly before us or are without merit. The judgment is affirmed.

[¶ 21] KAPSNER, MARING, NEUMANN and SANDSTROM, JJ., concur.